IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OLGA ZUNIGA | § | |
| | § | |
| v. | § | |
| | § | 1:18-CV-434-RP |
| JUSTICE KEVIN PATRICK YEARY, | § | |
| IN HIS OFFICIAL AND INDIVIDUAL | § | |
| CAPACITIES | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss (Dkt. No. 39) and Plaintiff's Motion to Strike certain exhibits and statements attached to the Motion to Dismiss (Dkt. No. 43). The District Court referred the above motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), Fed. R. Civ. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I.   GENERAL BACKGROUND

Plaintiff Olga Zuniga ("Zuniga") served as a legal secretary for Defendant Justice Kevin Patrick Yeary ("Judge Yeary") on the Texas Court of Criminal Appeals ("Court of Criminal Appeals" or "CCA"). Dkt. No. 52 ¶ 10. Zuniga alleges that Judge Yeary terminated her employment in 2017 because he disagreed with the political views that Zuniga expressed on Facebook. *Id.* ¶ 1.

Zuniga alleges the following facts. She worked as a legal secretary at the Court of Criminal Appeals for fourteen years.[1] *Id.* ¶¶ 6, 23. Her duties were not political in nature and she had no

---

[1] Zuniga refers to her position variously as "executive assistant," "secretary," and "legal secretary." *See* Dkt. No. 52 ¶¶ 1, 6, 7. For consistency, the Court uses "legal secretary."

policymaking role. *Id.* ¶ 22. When Judge Yeary was elected to the Court of Criminal Appeals in 2014, he continued to employ Zuniga for three years until her termination. *Id.* ¶ 10. Judge Yeary is a member of the Republican Party, ran for election as a Republican candidate, and actively campaigns for the Republican Party. *Id.* ¶ 11. Zuniga posted statements on her personal Facebook profile criticizing Republican politicians and expressing support for Democratic candidates. *Id.* ¶ 14. Zuniga alleges that throughout her employment for Judge Yeary and the Court, she "expressed her full support for Yeary and the Court." *Id.* ¶ 24. As a supporting exhibit, she attaches a screenshot of a Facebook post with a photo of Judge Yeary being sworn in as a member of the Court of Criminal Appeals. Dkt. 52-1 (Ex. A).

On or about November 9, 2016, Judge Yeary met with Zuniga to "counsel" her about her Facebook posts. *Id.* ¶ 15. "In 2017," he again "expressed his disapproval . . . about some of her posts regarding political issues and his disagreement with her political views." *Id.* ¶ 16. On or about September 23, 2017, Judge Yeary viewed Zuniga's Facebook page and found posts regarding various Republican officials, including Governor Abbott, Lt. Governor Patrick, and President Trump. *Id.* ¶ 17. On or about October 11, 2017, Judge Yeary terminated Zuniga's employment. *Id.* ¶ 18. He "specifically raised Ms. Zuniga's political Facebook posts and expressed his disapproval of them" and "falsely accused Ms. Zuniga of not recording leave on her September time sheet when she allegedly left the office before 5:00 pm." *Id.* After terminating Zuniga, Judge Yeary submitted a statement to the Texas Workforce Commission ("TWC") stating that her Facebook posts "were a reason for her termination." *Id.* ¶ 19. He wrote that her posts "had a distinct political edge" and "indicated what appeared to be clear political biases," and that some used "vulgar" or inappropriate language. *Id.* ¶ 19.

Zuniga alleges that Judge Yeary terminated her in retaliation for speaking on matters of public concern because her speech criticized Republican representatives and policies. *Id.* ¶¶ 20, 27.

2

She filed this action on May 22, 2018. Dkt. No. 1. After Judge Yeary's first motion to dismiss, Dkt. No. 6, Zuniga filed an Amended Complaint, Dkt. No. 52.[2] She asserts a single claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983. *Id.* ¶ 27. Zuniga seeks damages, reinstatement, and declaratory relief. *Id.* ¶ 30.

Judge Yeary's second Motion to Dismiss is now before the Court, along with the parties' responsive briefing. Dkt. Nos. 39, 41, 45. Judge Yeary argues that he dismissed Zuniga because she posted "lewd, unprofessional content," including sexual content, and "offensive, partisan criticisms" of Republican officials, the Court of Criminal Appeals, and Judge Yeary himself, while publicly associating herself with Judge Yeary and the CCA. Dkt. No. 39 at 1. Judge Yeary attaches screenshots of Zuniga's Facebook posts. Dkt. No. 39-3 19. He also attaches the job vacancy he posted to fill Zuniga's position, Dkt. No. 39-2, and his statement to the Texas Workforce Commission discussing reasons why he terminated Zuniga, Dkt. 39-1 ("TWC Statement"). Among these, he includes notes regarding an inaccurate monthly leave report, "indecent and offensive" Facebook posts, "failing to respond to reasonable requests," and "general apparent dissatisfaction with the job." *Id.* Relying on these exhibits, Judge Yeary argues that Zuniga has failed to state a First Amendment claim because her posts were sufficiently disruptive and hostile to Judge Yeary and the CCA that her speech rights as a citizen were outweighed by the state's interest in her effective performance as a public employee. Dkt. No. 39 at 8-18. Alternatively, Judge Yeary asserts he is entitled to qualified immunity in his individual capacity because it was not objectively unreasonable for him to believe that he could dismiss an employee who "publicly expressed disdain for him, his colleagues, and members of his political party while, in the same forum, openly

---

[2] Zuniga's Amended Complaint has a higher docket number than the instant motions due to a clerical error in docketing. *See* Dkt. 36 (Order granting leave to file amended complaint); Dkt. 52 (Amended Complaint); Dkt. 39 (Motion to Dismiss); Dkt. 43 (Motion to Strike).

associating herself with the Court." *Id.* at 20. Zuniga filed a motion to strike Judge Yeary's exhibits because they are not part of the pleadings and may not be considered on a Rule 12(b)(6) motion. Dkt. No. 43. The Court first addresses the motion to strike, and then the motion to dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P.12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court considering a motion to dismiss must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). While a court must accept all of the claimant's well-pleaded facts as true, it is not bound to accept as true conclusory allegations or allegations that merely restate the legal elements of a claim. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should only be dismissed if a court determines that it is beyond doubt that the claimant cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570. A motion to dismiss

4

pursuant to Rule 12(b)(6) is generally disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Moreover, "in deciding whether to grant a motion to dismiss, a district court may not 'go outside the complaint.'" *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (citation omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### III. THE MOTION TO STRIKE

In making his motion to dismiss, Judge Yeary relies on screenshots of Zuniga's Facebook posts, Dkt. Nos. 39-3  19, the job vacancy he posted to fill Zuniga's position, Dkt. No. 39-2, and his statement to the Texas Workforce Commission, Dkt. No. 39-1. None of this evidence was attached to the complaint. As noted, at the motion to dismiss stage a court may not rely on evidence outside of the complaint unless it is "central to the claim and referenced by the complaint." *Ironshore*, 912 F.3d at 763  (citing *Lone Star Fund*, 594 F.3d at 387). Indeed, the Fifth Circuit has reversed district courts when they have relied on evidence outside of the pleadings in deciding a 12(b)(6) motion. *See, e.g., Brand Coupon Network v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) ("We conclude that the district court erred when it considered evidence outside the pleadings   and not referred to therein   without converting the motion to dismiss into a motion for summary judgment."). And when the Circuit has approved of considering evidence outside the pleadings, it has usually involved documents such as contracts and insurance policies. *See, e.g., In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering contract referred to in complaint).

Though Zuniga refers in the Amended Complaint generally to being terminated because of Facebook posts, she does not attach specific posts, nor does she reference any posts with enough specificity to identify them individually. Dkt. No. 52 ¶¶ 1, 14-19; *see id.* ¶ 14 ("Ms. Zuniga posted comments on Facebook regarding politicians and political issues that were different than [Yeary's].") She also mentions the TWC statement in her Amended Complaint. *Id.* ¶ 19 ("Yeary wrote a statement to the Texas Workforce Commission in which he specifically stated that Ms. Zuniga's Facebook postings were a reason for her termination."). There is no mention of the job vacancy posting in the Amended Complaint; it is dated after her termination. While evidence that is central to the claim and referred to in the complaint, such as an affidavit, "may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with [a plaintiff's] allegations." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 41 (5th Cir. 2015). The Fifth Circuit has explained: "We distinguish [contrary] affidavits from contracts and medical records attached to a complaint, which we have held generally trump contradictory allegations in the complaint." *Id.* at 441 (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Allowing a defendant to try to controvert complaint allegations with evidence at the motion to dismiss stage "would deprive [the plaintiff] of the presumption of truth to which he is entitled at this stage of the litigation." *Id.* at 441 (citations omitted); *see also Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (suggesting that even where a document attached to a motion to dismiss is incorporated into the pleadings, the district court still must "construe the plaintiffs' factual allegations in the light most favorable to the plaintiffs").

Here, Zuniga disputes Judge Yeary's evidence and maintains that it conflicts with her allegations. Dkt. 43. She disputes that Judge Yeary's exhibits tell the full story, and claims she can counter those exhibits with other evidence. *Id.* at 3. In other words, the exhibits are not comparable

6

to a contract signed by both parties that assists a court to understand the undisputed terms of an agreement; these exhibits represent some of the central evidence in the dispute between Zuniga and Judge Yeary. Because they are disputed, and are not complete, the Court may not rely on these exhibits without affording Zuniga an opportunity to present her own evidence. At the motion to dismiss stage, the court must construe "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K.*, 369 F.3d at 467; *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations").

Accordingly, the Court grants Zuniga's motion to strike all of the exhibits attached to Judge Yeary's motion to dismiss. Judge Yeary may choose to re-file the motion as a motion for summary judgment and allow Zuniga an opportunity to respond. The Court now turns to Judge Yeary's grounds for dismissal.

## IV. THE MOTION TO DISMISS

Zuniga asserts a single claim against Judge Yeary for First Amendment retaliation under 42 U.S.C § 1983. Judge Yeary moves to dismiss on two grounds: failure to state a claim and qualified immunity.

### A. Legal Standard

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (internal quotation marks omitted). At the same time, "public employees do not necessarily shed their First Amendment rights of speech and political association in exchange for their jobs, but they often must make adjustments." *Gentry v. Lowndes Cty., Miss.*, 337 F.3d 481, 485 (5th Cir. 2003) (citing *Branti v. Finkel*, 445 U.S. 507, 518 (1980); *Rutan v. Republican Party*, 497 U.S. 62 (1990); *Elrod v. Burns*, 427 U.S. 347 (1976)).

Public employees' exercise of certain First Amendment rights "may legitimately be restrained where it could lead to an inability of elected officials to get their jobs done on behalf of the public." *Id.* (citing *Branti*, 445 U.S. at 517 18). "First Amendment issues presented by speaking employees are not answerable by mechanical formulae; courts must engage in a weighing exercise, giving 'full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public.'" *McBee v. Jim Hogg Cty., Tex.*, 730 F.2d 1009, 1016 (5th Cir. 1984) (quoting *Connick v. Myers*, 461 U.S. 138, 150 (1983)).

To state a First Amendment retaliation claim under Section 1983, a public employee must allege: "(1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employers interest in promoting efficiency; and (4) her speech motivated the employer's adverse action." *Modica v. Taylor*, 465 F.3d 174, 179 80 (5th Cir. 2006) (citing *Johnson v. Louisiana*, 369 F.3d 826, 830 (5th Cir. 2004)). To evaluate the third element, courts apply a balancing test that "considers among other things the policy sensitivity of the employment, the nature and content of the employee's speech or political activity, the extent of public concern implicated by the speech, and whether close confidential working relations with elected officials are necessary." *Gentry*, 337 F.3d at 485 (citations omitted). The Fifth Circuit places cases involving "only political association, only speech, or a combination of the two" on a spectrum. *Id.* (citations omitted). "Where nonpolicymaking, nonconfidential employees are discharged solely because of their private political views, little, if any, weighing of an employee's First Amendment rights against an employer's right to loyal and efficient service is necessary, and the employee's rights will usually prevail." *Id.* (citations omitted). On the "other end of the spectrum" are cases were a public employee is terminated because his or her exercise of First Amendment privileges "clearly over-balanced [outweighed]" his or her "usefulness" as an employee. *Id.* at 486 (quoting *Ferguson v. Thomas*, 430

8

F.2d 852, 859 (5th Cir. 1970)). When a termination falls within this spectrum, courts must "balance the extent to which 'public concerns' are implicated by the employees' speech or association against the significance of maintaining a close or confidential working relationship with the public employer." *Id.* (citing *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 994 (5th Cir. 1992) (en banc)). Where a public employee occupies a confidential or policymaking role, "the employer's interests more easily outweigh the employee's First Amendment rights." *Id.*[3]

**B.     Failure to State a Claim**

Judge Yeary argues that Zuniga has failed to state a claim for First Amendment retaliation because she was a confidential employee whose speech was "directly hostile" to the CCA, Judge Yeary himself, and other elected officials with whom he interacted. Dkt. No. 39 at 8. He terminated Zuniga because her "unprofessional and politically disparaging posts," together with several performance issues, "undermined Judge Yeary's trust and confidence in her ability and willingness to assist him in carrying out his judicial duties." *Id.* at 11.

In making this argument, Judge Yeary is making a statement about causation    that is, it was Zuniga's Facebook posts that caused him to fire her. Causation, however, is a question for the fact finder. *See Jordan v. Ector Cty.*, 516 F.3d 290, 301 (5th Cir. 2008) (explaining that the question for a jury in a First Amendment retaliation case is whether (1) former employee's protected political activity was a "substantial or motivating" factor in the employer's termination decision and (2) the employer "would have fired the employee regardless of the protected conduct.") (citation omitted). The Court cannot resolve a fact dispute about causation at the motion to dismiss stage. Instead, at this stage, the Court must view Zuniga's well-pleaded facts in the light most favorable to her, and

---

[3] While the Supreme Court has "rejected the strict application of 'policymaker' or 'confidential employee' tests, these terms 'illuminate the contours of the employee class that may permissibly be subjected to a political litmus test.'" *Wiggins v. Lowndes Cty., Miss.*, 363 F.3d 387, 390 (5th Cir. 2004) (quoting *Barrett v. Thomas*, 649 F.2d 1193, 1201 (5th Cir. 1981)) (citing *Branti*, 445 U.S. at 518).

9

accept as true her factual claim that "[Judge] Yeary disagreed with Ms. Zuniga's political views and terminated Ms. Zuniga because she expressed those views on Facebook and/or because her political affiliation was different than his." Dkt. No. 52 ¶ 1; *see id.* ¶ 27.[4] Other than raising this question of fact, the motion to dismiss does not raise any other reason why Zuniga has failed to state a First Amendment claim. The Court therefore recommends denying the motion to dismiss for failure to state a claim.

**C.    Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gentry*, 337 F.3d at 484 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The analysis has two steps. "The first inquiry is whether the plaintiffs have alleged a constitutional violation." *Id.* at 485 (citing *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995)). "If the first inquiry is satisfied, this court must determine whether the defendants conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred." *Id.* (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). When a motion to dismiss asserts a qualified immunity defense, "'the district court must' as always do no more than determine whether the plaintiff has 'filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). "[A] plaintiff is required by his pleadings to state facts which, if proved, would defeat a claim of immunity." *Id.* (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)). "The

---

[4] The Fifth Circuit has also stated that "the requirement to balance an employee's interest in his First Amendment speech against the employer's interest in promoting workplace efficiency 'implicates only the summary judgment analysis, not a Rule 12(b)(6) analysis.'" *Burnside v. Kaelin*, 773 F.3d 624, 628 (5th Cir. 2014) (quoting *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 n. 9 (5th Cir. 2000) (cleaned up), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

purpose of requiring such allegations is, of course, to permit the trial court, and our court on review, if necessary, to implement a qualified immunity defense 'at the earliest possible stage of litigation.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987)).

Judge Yeary argues that even if Zuniga has adequately alleged a First Amendment violation, he is entitled to qualified immunity in his individual capacity because "under governing First Amendment jurisprudence and given the facts of this case, it was not objectively unreasonable for Judge Yeary to believe he could dismiss an employee who had access to his confidential, pre-decisional legal materials and where that employee publicly expressed distain [sic] for him, his colleagues, and members of his political party while, in the same forum, openly associating herself with the Court." Dkt. 39 at 19-21. Once again, this argument relies on factual allegations outside the pleadings that the Court may not consider at this stage. *See supra*, Section III.

Nonetheless, because Judge Yeary asserts qualified immunity, the Court next considers whether Zuniga's complaint states facts which, if proved, would defeat a claim of immunity. *See Westfall*, 903 F.3d at 542. Zuniga's Amended Complaint alleges that Judge Yeary disagreed with Zuniga's political views and "terminated Ms. Zuniga because she expressed those views on Facebook and/or because her political affiliation was different than his." Dkt. No. 52 ¶ 1; *see id.* ¶ 27. The Court also accepts as true Zuniga's allegation that the Court of Criminal Appeals "regularly gave Ms. Zuniga strong, positive feedback about her performance" and "never wrote Ms. Zuniga up or disciplined her during her many years of employment, to the best of her recollection." *Id.* ¶ 27. The Fifth Circuit has held that "[t]erminating an employee for engaging in protected speech . . . is an objectively unreasonable violation of such an employee's First Amendment rights." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008). Viewing the pleadings in the light most favorable to Zuniga, she has pled that Judge Yeary terminated her for engaging in protected speech, and for no other reason. While Judge Yeary may indeed be entitled to qualified immunity, the Court cannot

11

reach that conclusion based on the facts that the Court must credit in Zuniga's pleading. The Court therefore recommends denying the motion to dismiss with respect to qualified immunity.

## IV. ORDER AND RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **GRANTS** the Motion to Strike all of the exhibits attached to the motion to dismiss (Dkt. No. 43). The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** the Motion to Dismiss (Dkt. No. 39) consistent with the terms of this report and recommendation.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 5th day of February, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE